IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RACHEL COOPER                                                                                          PLAINTIFF

V.                                            Case No. 12-6023

LARRY SANDERS, SHERIFF
IN HIS OFFICIAL CAPACITY and
GARVIN REID, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY                                                                                      DEFENDANT

### MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Separate Defendant Larry Sanders, in his official capacity. (ECF No. 60). Plaintiff Rachel Cooper[1] has responded. (ECF No. 64). The matter is ripe for the Court's consideration. For the reasons explained below, Separate Defendant's motion is granted in part and denied in part.

### I.  BACKGROUND

The record, viewed in the light most favorable to Plaintiff, supports the following set of facts. During all times relevant to this lawsuit, Sheriff Larry Sanders was the elected sheriff for Garland County, Arkansas. He was responsible for the "custody, rule, and charge of the county jail." Ark. Code Ann. § 12-41-502. On February 6, 2011, Plaintiff Rachel Cooper, a trustee inmate of the Garland County Detention Center was allegedly raped by Deputy Garvin Reid, who was employed as a jailer at the time.[2] Cooper did not initially report the rape but instead told another female trustee

---

[1] The Court notes that Cooper's name seems to have been misspelled in her initial complaint and that the correct spelling of her first name is "Rachael."

[2] The Court anticipates that Reid will contest this fact at trial. For the purpose of deciding Sheriff Sanders' summary judgment motion, however, the Court views this fact in the light most favorable to Plaintiff.

inmate inquiring about why Cooper appeared upset. Cooper told the inmate that she did not report the rape because she thought no one would believe her. The inmate informed Sergeant McConnell that Cooper was sexually assaulted by Reid in the stock room. After an investigation, Garvin Reid was charged with rape.[3] On February 7, 2011, Reid's employment with the Garland County Detention Center was terminated.

Reid was hired by the Garland County Detention Center on October 10, 2010. A background check, including a psychological examination, was conducted prior to Reid's hiring, and he was found to have no disqualifying information in his background. Prior to Reid's alleged sexual assault upon Cooper, he was accused of other instances of sexual misconduct as a jailer deputy, including the following: (1) sexually harassing a female coworker, Ashley Collier, by sticking his tongue in her ear and trying to kiss her; (2) making sexual comments to female trustee inmate Cynthia McCaughin; and (3) making comments about wanting to date female inmate Brenda Mann. Both Collier and McCaughin reported Reid's alleged sexual conduct to authorities at the Garland County Detention Center. Reid was never disciplined for these instances, and there is no mention of them in his personnel file.

There were also reports of sexual misconduct by other Garland County deputies under Sheriff Larry Sander's administration prior to Reid's assault upon Cooper. One deputy was accused of exposing himself to female inmates in the jail through a hole in a closet. Another male deputy was accused of picking up a female inmate from the Arkansas Department of Corrections and having sex with her in a patrol unit. Yet another deputy sergeant admitted to failing to serve a valid felony arrest

---

[3] As of December 3, 2013, the rape charge against Reid was still pending in state court.

warrant against a complainant and later telling her to "be clean and pretty," expressing a desire to see her naked, and telling her that he "wanted to taste her."

Rachel Cooper brings this civil rights action against Sheriff Sanders in his official capacity and Garvin Reid in his official and individual capacities. Specifically, Cooper asserts 42 U.S.C. § 1983 and Arkansas Civil Rights Act claims against Reid based on his conduct and against Sheriff Sanders based on his failure to properly hire, supervise, or train Reid or investigate complaints against him. Cooper also asserts a § 1983 retaliation claim against Sheriff Sanders. The issue before the Court today is whether Sheriff Sanders is entitled to summary judgment on these claims.[4]

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the inquiry is not whether the evidence favors one side or the other, but "whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997)). To defeat a motion for summary judgment, however, the non-moving

---

[4] Cooper asserts that she made an Arkansas state law negligent hiring and supervision claim against Sheriff Sanders in his official capacity, which Sheriff Sanders did not address in his summary judgment motion. The Court makes no ruling on this claim in this opinion. The Court, however, notes that Ark. Code Ann. § 21-9-301 prevents a person from recovering for the negligence of a political subdivision, or for its employees' negligent performance of their official duties. Also, Sheriff Sanders asserts that he is entitled to summary judgment on Plaintiff's outrage claim; however, Plaintiff states that she does not assert an outrage claim against Sheriff Sanders.

party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (8th Cir. 1997). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

### III.  DISCUSSION

Sheriff Sanders contends that he is entitled to summary judgment on all of Cooper's § 1983 and Arkansas Civil Rights Claims.[5] Cooper, on the other hand, asserts that she has raised material disputes of fact concerning whether Sheriff Sanders failed to properly train and supervise Reid and whether she was retaliated against for reporting the alleged rape to authorities.

At the outset, the Court notes that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (citing *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)). Here, a suit against Sheriff Sanders in his official capacity is actually a suit against Garland County.

Generally, a local government cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694,

---

[5] The Court notes that Cooper does not allege any facts specific to the Arkansas Civil Rights Act. In fact, Cooper states that "the facts which support her claim under one law support the other." Thus, the Court will use the same analysis to decide both Cooper's 42 U.S.C. § 1983 claims and her Arkansas Civil Rights Act claims. *See* Ark. Code Ann. § 16-123-105(c) (instructing courts to look to federal civil-rights laws when interpreting the Arkansas Civil Rights Act of 1993).

98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell*, 436 U.S. at 691, 98 S. Ct. 2018; (2) an unofficial "custom," *id.* at 690-91, 98 S. Ct. 2018; or (3) deliberate indifferent failure to train or supervise. *See City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 412 (1978). Here, there is no official policy at issue in this case. Instead, Cooper claims that there existed in Garland County a custom of failing to inadequately train and supervise its employees.

### A. Failure to Supervise

Garland County may be subject to § 1983 liability for failing to act on complaints of sexual misconduct by its employees if it had an unofficial custom of failing to act upon prior similar complaints of unconstitutional conduct, which caused Cooper's injuries. *See Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996). The existence of a custom is shown by a "prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Id*. (citing *Monell*, 436 U.S. at 691, 98 S Ct. at 2036)). To establish a county's liability for failure to prevent misconduct by employees, a plaintiff must show that county officials had knowledge of prior incidents of police conduct and deliberately failed to take remedial action. *Id*. (citing *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992)). A plaintiff must also establish causation—that is, a plaintiff must show that a county's custom of laxness or inaction toward allegations of sexual conduct was the "moving force" behind his or her injury. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 884 (1998).

Here, Cooper asserts that Garland County is responsible for her injury because one of its officials, Sheriff Sanders, was deliberately indifferent to a known pattern of sexual misconduct by

his employees. She alleges that there existed in the county an unofficial custom of failing to investigate or act on complaints of sexual misconduct by employees of Sheriff Sanders.

To support her claims, Cooper references alleged incidents of sexual misconduct by Reid that happened before his alleged sexual assault of Cooper for which Reid was never disciplined. There is evidence that Reid made unwelcome sexual advances towards a co-worker a couple of months or perhaps weeks before he allegedly raped Cooper. This co-worker, Ashley Collier, testified that he sent her a suggestive text message, stuck his tongue in her ear, and attempted to kiss her. This incident was reported to Collier's supervisor and eventually to an investigator, Joel Ware, and the jail administrator, Captain Mel Steed. Reid, however, was never disciplined for his behavior in this incident. There is also evidence that Reid made sexual comments and suggestive gestures towards another female trustee inmate, Cynthia McCaughin, during the weeks prior to his alleged rape of Cooper. McCaughin states that she verbally reported these comments to Captain Steed. This incident apparently was never investigated and did not result in any disciplinary action against Reid. Finally, Cooper references a claim that Reid asked another inmate, Brenda Paige Mann, if she would go on a date with him when she got out of jail. It is unclear, however, whether this incident was ever reported to jail authorities.

Sheriff Sanders claims that he had no knowledge of these alleged prior incidents of sexual misconduct by Reid. Captain Steed met with Sheriff Sanders every week to discuss important matters concerning the jail. Captain Steed, although unable to recall specifically which complaints he discussed with Sheriff Sanders, testified that he would have communicated any sexual contacts between jailers and inmates to Sheriff Sanders and that he would have taken any "serious allegations" to Sheriff Sanders for review.

As further evidence of an unofficial custom, Plaintiff cites to an incident involving a deputy who exposed his genitals more than once to female inmates through a hole in a supply closet. Although Sheriff Sanders stated that this deputy was terminated, a review of the deputy's file indicates that he was allowed to resign and was not terminated. Plaintiff references another incident where a deputy was alleged to have engaged in sexual activity with a female inmate during transport. This incident allegedly occurred before Reid's sexual assault of Cooper, although the record is unclear as to whether this happened before or after Sheriff Sanders became the sheriff of Garland County. Also unclear is whether this incident was ever investigated.

In 2008, allegations of sexual misconduct were filed against another deputy who was sent to serve a felony arrest warrant on a female but instead failed to serve the warrant and later called the female expressing a desire to see her naked and stating that he "wanted to taste her." The deputy admitted that the allegations were true, and he was allowed to resign. Allowing this deputy to resign is contrary to Sheriff Sanders' statement that, when allegations of sexual misconduct arose during his administration, the offender was terminated. There was another complaint of sexual assault filed against this same deputy in 2000. There is nothing in the file, however, to indicate whether an investigation occurred and whether the deputy was disciplined. The Court notes that the 2000 incident seems to have occurred before Sheriff Sanders became sheriff of Garland County.

Here, Cooper has presented evidence that the Sheriff's Office failed to investigate several complaints of sexual misconduct by its deputies and failed to discipline certain deputies for their misconduct. Although tenuous, Cooper has also presented evidence that Sheriff Sanders had knowledge of these complaints. Thus, a reasonable jury could find that a custom of failing to supervise the deputies of the Sheriff's Office existed and that Sheriff Sanders was deliberately

indifferent to the misbehavior of his deputies. Further, the evidence presented by Cooper could allow a reasonable jury to conclude that Garland County's custom of laxness or inaction towards allegations of sexual misconduct was the "moving force" behind Cooper's injury. Unpunished crimes tend to breed more criminal behavior. Accordingly, Defendant's summary judgment motion on this issue is denied.

### B. Failure to Train

Cooper asserts that Garland County caused Reid to sexually assault her by failing to adequately train Reid. A county may be the subject of § 1983 liability for inadequate training of its employees where (1) the county's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by the county; and (3) an alleged deficiency in the county's hiring or training procedures actually caused the plaintiff's injury. *Ball*, 594 F.3d at 997 (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 412 (1978)). A plaintiff must show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the county can reasonably be said to have been deliberately indifferent to the need. *City of Canton*, 489 U.S. at 390, 109 S. Ct. at 1205). "In other words, the plaintiff must demonstrate that the [county] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Andrews*, 98 F.3d at 1076.

Cooper makes a § 1983 claim for failure to train in her Complaint; however, she does not devote much space to this specific argument in her 48-page response to Sheriff Sanders' summary judgment motion, and her arguments on this issue are scattered throughout multiple sections of the

brief. Conversely, Sheriff Sanders quite summarily addresses the failure to train claim and does not discuss the specific training that Reid received during his four months of employment. It appears that Cooper is arguing that the training program was inadequate because the deputies should have had additional or more specific training regarding sexual misconduct, such as a written policy forbidding sexual harassment of inmates by jailer deputies.

The Eighth Circuit has rejected a similar argument in holding that there was "no patently obvious need to train an officer not to rape young women even in the face of actual knowledge of deviant behavior." *Ball*, 594 F.3d at 999 (citing *Andrews*, 98 F.3d at 1077). The proper conduct for a deputy, refraining from sexual assault and rape of inmates, is patently obvious. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior, and the Court has difficulty conceiving how more training could have prevented Reid's alleged sexual assault of Cooper. Cooper has failed to raise a question of fact as to this issue. Accordingly, Defendant's summary judgment motion is granted as to Cooper's failure to train claim.

### C. Retaliation

In addition to the failure to supervise and train claims, Cooper alleges that Sheriff Sanders retaliated against her for reporting the alleged rape by denying her privileges, placing her in solitary confinement, and taking away her trustee status. To prevail on a retaliation claim, Cooper must show that: (1) she engaged in protected expression; (2) she suffered an adverse action; and (3) the adverse action was causally related to the protected expression. *Nelson v. Shuffman*, 603 F.3d 439 (8th Cir. 2010). Sheriff Sanders only contests the third element, arguing that she was placed in solitary confinement because she was at risk for committing suicide. Cooper specifically alleges that

immediately after reporting the alleged rape, she was placed in solitary confinement, denied access to the commissary, denied visitation and phone calls with her mother, subjected to verbal abuse by jailer deputies, and stripped of her trustee status. Cooper further alleges that the reason for these adverse actions are causally related to her reporting the alleged rape and not because she was at risk for committing suicide. *See Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990) (act in retaliation for exercising constitutionally protected right is actionable under § 1983 even if act, when taken for another reason, would have been proper). Other than giving an alternative reason for placing Cooper in solitary confinement, Sheriff Sanders offers no explanation as to why these adverse actions were taken against Cooper. The Court finds that there are lingering fact questions as to why these adverse actions were taken and that a reasonable jury could conclude that they were taken in retaliation. Thus, summary judgment is denied as to this claim.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Sheriff Sanders' Motion for Summary Judgment (ECF No. 60) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Cooper's failure to train claim is dismissed with prejudice, and Cooper's failure to supervise claim and retaliation claim will proceed to trial.

IT IS SO ORDERED, this 5th day of February, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge